NOV 2 2026 PM1:32
FILED - USDC - FLMD - ORL

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

| | |
|---|---|
| CLAUDIA LOPEZ,<br><br>Plaintiff,<br><br>v.<br><br>WAYNE IVEY, in his official capacity as Sheriff of Brevard County, Florida; BREVARD COUNTY, FLORIDA; CITY OF ROCKLEDGE, FLORIDA; ALICE DIBIASE DEAKINS; SHANNON HOOPER; CHRISTIAN PORTOCARRERO; JOHN DOE PROPERTY MANAGER 1; and JOHN DOE ROCKLEDGE POLICE OFFICERS 1 AND 2,<br><br>Defendants. | CASE NO.: 6:26cv2565-PGB-DCI<br><br>DIVISION: Orlando<br><br>JURY TRIAL DEMANDED |

**CIVIL RIGHTS ACTION UNDER 42 U.S.C. § 1983 FOR CONSTITUTIONAL VIOLATIONS UNDER COLOR OF LAW, FEDERAL CLAIMS, STATE TORTS, AND DEMAND FOR JURY TRIAL**

Plaintiff Claudia Lopez complains against the Defendants named above and alleges as follows:

## PRELIMINARY STATEMENT — PLAINTIFF APPEARS PRO SE AND RESERVES ALL RIGHTS

Plaintiff Claudia Lopez files this Complaint on her own behalf, without an attorney, and respectfully states to the Court and to all parties:

**A. Plaintiff asserts her right to represent herself.** Plaintiff pleads and conducts her own case personally, as of right under 28 U.S.C. § 1654.[1] Plaintiff is not an attorney and has no legal training. She prepared this Complaint herself, in good faith, on the facts as she knows them and on the public court records of her own cases.

**B. Plaintiff respectfully reminds the Court that she is not to be held to the strict rules applied to attorneys.** A document filed pro se is "to be liberally construed," and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."[2] Plaintiff respectfully requests that this Complaint, and every filing she makes in this case, be read under that standard. Plaintiff understands that she is subject to the

---

1. 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."). The statutory right descends from § 35 of the Judiciary Act of 1789, 1 Stat. 73, 92. The Supreme Court has explained that the right of self-representation rests on the structure of the Sixth Amendment and on the respect for individual autonomy and dignity that the Amendment embodies. *Faretta v. California*, 422 U.S. 806, 819–20, 834 (1975). It is also an incident of the constitutional right of access to the courts and to petition the government for redress of grievances. U.S. Const. amend. I; amend. XIV, § 1.

2. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam) (the allegations of a pro se complaint are held "to less stringent standards than formal pleadings drafted by lawyers"). The Eleventh Circuit applies the same rule: "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam); see also *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).

Federal Rules of Civil Procedure and the Local Rules of this Court, and she does not ask to be excused from them. She asks only that her filings be construed liberally, as the standard above provides, and that, if the Court finds any defect of form in a filing, she be given notice of it and leave to amend, or a reasonable opportunity to correct it, as Fed. R. Civ. P. 15 allows, before the defect is held against her.

**C. Reservation of the right to amend.** Plaintiff expressly reserves the right to amend this Complaint as of course, to seek leave to amend, and to supplement it, as the Federal Rules of Civil Procedure allow[3] — including to substitute the true identity of Defendant John Doe Property Manager 1 when it is learned, to add claims as they accrue or become ripe, and to conform the pleadings to the evidence. Nothing in this Complaint waives any claim, right, or remedy available to Plaintiff.

**D. Good faith, signature, and how to reach Plaintiff.** Plaintiff will comply, to the best of her ability, with the Federal Rules of Civil Procedure, the Local Rules of this Court, and every order of this Court, and will meet every deadline of which she receives notice. Plaintiff signs this Complaint personally, as Rule 11(a) requires; her signature appears in conformed electronic (/s/) form.[4] Plaintiff

---

3. Fed. R. Civ. P. 15(a)(1) (amendment once as a matter of course); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); Fed. R. Civ. P. 15(d) (supplemental pleadings). Leave to amend is to be freely given absent a substantial reason to deny it, such as undue delay, bad faith, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A pro se plaintiff in particular must be given at least one chance to amend the complaint before dismissal with prejudice where a more carefully drafted complaint might state a claim. *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part on other grounds by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541 (11th Cir. 2002) (en banc); see also *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

may be reached at the address, telephone number, and email address in her signature block below. Where Plaintiff's filings fall short, she respectfully asks that the shortfall be read as the result of her lack of legal training, and not as any lack of respect for this Court.

## I. NATURE OF THE ACTION

1. This is a civil action by Plaintiff Claudia Lopez, for herself alone, arising from the seizure and killing of her animals by Brevard County Animal Control in December 2017 and early 2018 and the forfeiture that followed in 2018; from a years-long course of harassment of Plaintiff by her next-door neighbor, Defendant Alice Deakins, a Rockledge Police Department corporal, carried out in her department's uniform and patrol car at a street outside her own department's jurisdiction, including two stops of Plaintiff by Rockledge Police Department officers and a search of Plaintiff's car for drugs that found nothing, and including Defendant Deakins's insertion of herself into a Brevard County Sheriff's investigation of Plaintiff and into the removal of Plaintiff from her home; from Plaintiff's arrest on April 25, 2022 by Brevard County Sheriff's Deputy Shannon Hooper, in Brevard County Case No. 05-2022-CF-027783, after Plaintiff reported a burglary of her own home and after Deputy Hooper obtained complaints against Plaintiff from the very people Plaintiff had accused; from the execution of a writ of possession at Plaintiff's home on October 28, 2022, and the

4. Fed. R. Civ. P. 11(a) (an unrepresented party must sign every pleading personally). Copies of this Complaint bear Plaintiff's conformed (/s/) electronic signature; Plaintiff will hand-sign any original the Clerk requires and will comply with this District's procedures for papers filed by unrepresented parties.

taking and disposal of Plaintiff's personal property in the days that followed by the property management for the property, with no notice of where her property was; from the taking of Plaintiff's cat by Brevard County Animal Control on October 28, 2022; and from Plaintiff's arrest on November 1, 2022 by Brevard County Sheriff's Deputy Christian Portocarrero, in Brevard County Case No. 05-2022-MM-051352, after Plaintiff herself called 911 for help — a case the prosecutor dropped on November 15, 2022 by filing a Notice of No Information.

**2.** Plaintiff brings this action under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution, and under Florida law for conversion, over which this Court has supplemental jurisdiction.

**3.** The counts are anchored on the arrests and prosecutions that terminated in Plaintiff's favor or that accrued on the dates stated in each count: the November 1, 2022 arrest by Deputy Portocarrero, which the State abandoned on November 15, 2022; the prosecution begun by Deputy Hooper, which ended on May 4, 2023; and the injunction-violation prosecution based on Defendant Deakins's complaint, which the State abandoned on December 6, 2023. Earlier acts are pleaded in the Pattern and Profiling section, Part IV.I below, as background evidence of motive, intent, notice, and custom, as stated in paragraph 114.

## II. JURISDICTION AND VENUE

**4.** This Court has subject-matter jurisdiction over the federal claims under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3)–(4) (civil rights).

**5.** This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a), because they arise from the same nucleus of operative fact — the events at and around 1455 Martin Road, Rockledge, Florida described below — as the federal claims.

**6.** Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202 and Fed. R. Civ. P. 57.

**7.** Venue is proper in the Middle District of Florida, Orlando Division, under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in Brevard County, Florida.

**8.** This Court has personal jurisdiction over each Defendant because each is located in Florida or committed the acts alleged within Florida.

## III. THE PARTIES

**9.** Plaintiff **Claudia Lopez** is Claudia Natalia Lopez. She is the same person as Claudia Davis in the Brevard County court records. She lived at 1455 Martin Road, Rockledge, Florida 32955, from 2008 until October 28, 2022. She brings this action for herself alone, on her own counts only.

**10.** Defendant **Wayne Ivey** is sued in his official capacity as Sheriff of Brevard County, Florida. The Brevard County Sheriff's Office is the agency of

Defendants Hooper and Portocarrero and of the deputies who executed the writ of possession on October 28, 2022, and the animal-control citations in Plaintiff's cases were issued by animal enforcement officers of the Sheriff's agency, on the Sheriff's letterhead. Service: Brevard County Sheriff's Office, 700 S. Park Avenue, Titusville, FL 32780.

11. Defendant **Brevard County, Florida** is a political subdivision of the State of Florida, sued through its Board of County Commissioners. Brevard County is the plaintiff named in the twenty animal-control cases filed against Plaintiff between 2017 and 2020 and is responsible for animal control in Brevard County.

12. Defendant **City of Rockledge, Florida** is a municipal corporation of the State of Florida. The Rockledge Police Department is the City's police department; it is not a separate legal entity, and the City is sued for the acts of its Department and of its officer, Defendant Deakins, as alleged below. Defendant Deakins is and was a Rockledge Police Department officer — Corporal Alice Deakins, Department of Public Safety – Police Division, Rockledge Police Department ID 117, subpoenaed in Plaintiff's cases at the Department's address, 1776 Jack Oates Boulevard, Rockledge, Florida. The City is sued for the municipal liability alleged in Counts XVI and XVII.

13. Defendant **Alice DiBiase Deakins** ("Deakins") is an individual who lived next door to Plaintiff at 1469 Martin Road, Rockledge, Florida. She is a police officer with the Rockledge Police Department, Corporal Alice Deakins, Rockledge Police Department ID 117. She is sued in her individual capacity.

14. Defendant **Shannon Hooper** is a Deputy of the Brevard County Sheriff's Office, Badge 4612. She is the deputy who took Plaintiff's burglary report in the spring of 2022 and who arrested Plaintiff on April 25, 2022, Brevard County Sheriff's agency case 2022-00144496. She is sued in her individual capacity.

15. Defendant **Christian Portocarrero** is a Deputy of the Brevard County Sheriff's Office, Badge 4789. He is the deputy who arrested Plaintiff on November 1, 2022, Brevard County Sheriff's agency case 2022-00380721. He is sued in his individual capacity.

16. Defendant **John Doe Property Manager 1** is the presently unidentified person or company that acted as property management for 1455 Martin Road at and after October 28, 2022, whose staff were present at the execution of the writ of possession on October 28, 2022, and who took control of, removed, and disposed of Plaintiff's personal property as alleged below. In Plaintiff's own papers written on October 31, 2022, three days after the eviction, Plaintiff identified the company whose crew disposed of her property as "All Florida Management." Plaintiff does not yet know that company's full legal name and sues it as John Doe Property Manager 1, to be amended when its legal identity is established.

17. Defendants **John Doe Rockledge Police Officers 1 and 2** are the presently unidentified Rockledge Police Department officers who stopped Plaintiff two times and searched her car looking for drugs, as alleged in

paragraphs 88–89 below. Plaintiff does not yet know their names and sues them as John Doe officers, to be amended when their identities are established.

## IV. STATEMENT OF FACTS

### A. Plaintiff, her home, her farm — and the Rockledge Police Department's lack of jurisdiction over Martin Road

**18.** Claudia Lopez lived at 1455 Martin Road, Rockledge, Florida 32955, from 2008 until October 28, 2022. 1455 Martin Road was Claudia Lopez's home.

**19.** At 1455 Martin Road, Claudia Lopez ran Happy Hooves Farm, a petting park business, a well-established and respected business with a lot of community involvement.

**20.** Through her community involvement, Claudia Lopez met Alice Deakins, a police officer with the Rockledge Police Department. Deakins began visiting the farm and made constant sexual advances toward Claudia Lopez, which led Claudia Lopez to tell Deakins that she was not welcome anymore.

**21.** In 2017, Hurricane Irma flooded the farm corner to corner. The devastation was total, and the farm was closed to the public.

**22.** On November 10, 2017, as Claudia Lopez was leaving her farm, she was stopped by Deakins, and Deakins informed her that Deakins was now her next-door neighbor, at 1469 Martin Road. From then on, the nightmare started.

**23.** Deakins used to come to visit Claudia Lopez and tell her that if she needed any help, to let her know. Deakins was the one who was calling Animal

Control. Animal Control, seeing the devastation, instead of offering any kind of support, started with a $1,500 ticket.

**24.** In 2015–2016, Claudia Lopez fired an employee. The fired employee started a vendetta against Claudia Lopez, and Animal Control was very involved, because there were accusations of animal cruelty and animal neglect, to the point that Animal Control needed to have a veterinarian examine every animal at the farm, with their medical records. Animal Control never found anything to raise concerns. The animals were healthy, with the right weight, and were taken care of.

**25.** Martin Road is not in the jurisdiction of the Rockledge Police Department. 1455 Martin Road and 1469 Martin Road sit outside the City of Rockledge, in the part of Brevard County served by the Brevard County Sheriff's Office. The Rockledge Police Department had no jurisdiction over Claudia Lopez's home at 1455 Martin Road.

**26.** The Brevard County Sheriff's Office is the agency with jurisdiction over Martin Road, and the Brevard County Sheriff's Office is the agency that arrested Claudia Lopez, put Claudia Lopez out of her home, and ran the jail Claudia Lopez was held in.

**B. Brevard County Animal Control — the December 2017 seizure and the killing of the mare Camilla**

**27.** The first Animal Control visits concerned animals at large. The farm was having a problem: the horses could not be put back because the land was

wet. The horses were never running on the street. They were in an area in between the farm and the house on the south side of the farm.

**28.** On or about December 21, 2017, while Claudia Lopez was not home, Brevard County Animal Control officers entered 1455 Martin Road without a warrant and without Claudia Lopez's consent.

**29.** On or about December 21, 2017, Brevard County Animal Control officers seized Claudia Lopez's seven animals: her 30-year-old Appaloosa mare, Camilla; an Arabian horse; a donkey; a miniature horse; two miniature donkeys; and a llama.

**30.** Claudia Lopez called Brevard County Animal Control repeatedly, asking about her animals.

**31.** Brevard County Animal Control told Claudia Lopez that Brevard County Animal Control could give her no information.

**32.** Brevard County Animal Control told Claudia Lopez that she was not allowed information about her own animals.

**33.** In early January 2018, Brevard County Animal Control telephoned Claudia Lopez and told her that her mare Camilla would be euthanized because the mare was not healthy.

**34.** Claudia Lopez objected to the euthanasia of her mare.

**35.** Claudia Lopez told Brevard County Animal Control that her mare was thin because her mare was thirty years old, not because her mare was neglected.

**36.** Claudia Lopez asked Brevard County Animal Control for a final visit with her mare.

**37.** Brevard County Animal Control denied Claudia Lopez a final visit with her mare.

**38.** Brevard County Animal Control euthanized Claudia Lopez's Appaloosa mare, Camilla.

**39.** After these events, Claudia Lopez was left with severe depression, which is a reason she was not too enthusiastic about pursuing things. Nevertheless, Animal Control officers were constantly harassing her, visiting the farm as if it was theirs. There are several videos that will be on the record of Animal Control being escorted out of the farm because they had nothing to do at the farm.

**40.** Service departments got involved, and every time Deakins called Animal Control, members of a service department accompanied them, for security reasons. Animal Control officers tried to find every single opportunity to fine Claudia Lopez instead of helping her. She was a mother, completely depressed, and instead of helping, they decided to harass her.

**41.** No petition under Florida Statutes § 828.073, no notice of a fitness hearing, and no court order adjudging Claudia Lopez unable or unfit to have custody of her animals and ordering any animal destroyed was ever served on Claudia Lopez or filed in any of the animal-control cases or in Case No. 05-2018-MM-013743 described in paragraph 44, and no impound record, seizure record, or euthanasia record for the December 2017 animals appears in any of those court files.

### C. The early-2018 cutting of the fence and the taking of the last horse

42. In early 2018, Alice Deakins cut the front part of Claudia Lopez's fence, without Claudia Lopez's authorization. When Claudia Lopez approached her, Deakins denied that she did it. There are pictures and a witness. The pictures are not in the case Claudia Lopez filed in court against Deakins: the court gave notice that the court was going to erase those pictures, Claudia Lopez never received the notice, and she does not know the reason for deleting evidence.

43. On a weekend when Claudia Lopez was away, Claudia Lopez's last horse got out through the cut fence. Animal Control seized the horse and never notified Claudia Lopez that they took the horse. They never gave her the opportunity to pick up her horse, and they did not give her the location, notice, or an opportunity to cure. Police were there when the horse was taken. They did not fine Claudia Lopez for that, and they did not hold Alice Deakins accountable for cutting the fence.

### D. The 2018 forfeiture in Case No. 05-2018-MM-013743

44. In Brevard County Case No. 05-2018-MM-013743, a plea agreement signed and accepted on June 28, 2018 recorded an agreed term of forfeiture of all animals in the custody of the Brevard County Sheriff's Office.

45. By order dated July 2, 2018, nunc pro tunc to June 28, 2018, forfeiture was ordered of all animals currently owned by Claudia Lopez — broader than the plea's wording of animals in custody.

**46.** On July 9, 2018, on the defense's oral motion to amend, granted with Claudia Lopez present, the forfeiture was narrowed to the animals then in the custody of Brevard County Animal Services, as a term of the plea.

**47.** No document in Case No. 05-2018-MM-013743, and no document in any of the twenty animal-control cases, names which animals were in the custody of Brevard County Animal Services, and no document in any of those files records a petition, notice, or hearing under Florida Statutes § 828.073, an impound record, or a euthanasia record.

**48.** Claudia Lopez's own letter filed in Case No. 05-2018-MM-013743 on October 18, 2018 states that officers entered her property without warrants and seized her animals while she was not home, with no legal notice; that her Appaloosa mare Camilla was seized; that an officer she names as Officer Scragg called to say Camilla would be put down as very ill; that she begged for a last visit and was denied; and that the mare was killed. Attached to that letter were Florida Department of Health Animal Care Facility Inspection Reports for Happy Hooves for 2013 to 2015, all marked Satisfactory.

**E. The twenty animal-control cases, 2017–2020**

**49.** Between 2017 and 2020, Brevard County filed twenty animal-control cases against Claudia Lopez — for animals at large, for nuisance animals, for failure to secure an animal, for cruelty to animals, and for interfering with an animal control officer.

**50.** The twenty animal-control cases are: 05-2017-IN-002370, filed October 5, 2017; 05-2017-IN-002691, filed November 21, 2017; 05-2017-IN-002693, filed November 21, 2017; 05-2017-IN-002723, filed November 28, 2017; 05-2017-IN-002773, filed December 6, 2017; 05-2017-IN-002818, filed December 13, 2017; 05-2017-IN-002832, filed December 15, 2017; 05-2017-IN-002871, filed December 22, 2017; 05-2018-IN-000188, filed January 30, 2018; 05-2018-IN-000926, filed May 23, 2018; 05-2018-IN-001180, filed June 22, 2018; 05-2018-IN-001500, filed July 13, 2018, and dismissed August 9, 2018; 05-2019-IN-001195, filed April 29, 2019; 05-2019-IN-001848, filed July 2, 2019; 05-2019-IN-001894, filed July 10, 2019; 05-2019-IN-002564, filed September 23, 2019; 05-2019-IN-002582, filed September 24, 2019; 05-2019-IN-002985, filed November 20, 2019; 05-2019-IN-003076, filed December 5, 2019; and 05-2020-IN-001159, filed May 14, 2020, and dismissed July 21, 2020.

**51.** Alice Deakins was the affiant and the witness behind the citations in five of those cases. In Case No. 05-2019-IN-001195, Alice DiBiase Deakins, 1469 Martin Road, was subpoenaed, and she testified as a State witness at the non-jury trial on June 27, 2019, in the case over Claudia Lopez's dog Chulo, and Claudia Lopez was found guilty. In Case No. 05-2019-IN-002564, Deakins is named Victim and Affiant, the citation rested on her At Large Affidavit, she was subpoenaed and present as the witness at the hearing, and Claudia Lopez pleaded nolo contendere and was adjudicated guilty. In Case No. 05-2019-IN-002582, the citation was issued based on a sworn affidavit from Alice Deakins, the offense location in that citation is 1469 Martin Road, Deakins's address, and Claudia

Lopez was adjudicated guilty. In Case No. 05-2019-IN-003076, every citation was issued per a sworn statement by Alice Deakins; Deakins is named Victim and Witness; Corporal Deakins, with the Rockledge Police Department, left a voicemail that the witness was unavailable on January 27, 2020, the January 27, 2020 hearing was cancelled with the continuance requested by Law Enforcement and the papers copying Witness Corporal Deakins, ID #117, Rockledge Police Department; Deakins was subpoenaed at 1776 Jack Oates Boulevard, Rockledge, the Rockledge Police Department address; she was a court witness at the hearing; and Claudia Lopez was acquitted on two counts on March 6, 2020 and found guilty on two counts. In Case No. 05-2020-IN-001159, a canine belonging to Claudia Lopez was photographed roaming at large, the citation rested on an affidavit and pictures with Alice Deakins, 1469 Martin Road, named as Victim and Witness, and the case was dismissed on July 21, 2020, at the officer's request. Deakins's sworn affidavit itself is not in any of those files.

**F. Alice Deakins — the neighbor, the officer, and the harassment**

**52.** Alice Deakins lived next door to Claudia Lopez at 1469 Martin Road.

**53.** Alice Deakins worked for the City of Rockledge as a police officer in 2017, 2019, and 2021 through 2024, covering the whole 2017 to 2022 period. Because of her unscrupulous actions, Alice Deakins was demoted from being a corporal for a good period of time.

54. From November 2017 to March 2018, Alice Deakins came uninvited to Claudia Lopez's farm with her patrol car, with the sirens, just for fun. When Claudia Lopez had a yard sale going, Deakins removed the yard sale signs.

55. Alice Deakins removed and destroyed Claudia Lopez's yard sale signs, repeatedly.

56. Every time anybody was coming either to visit the farm or to work, Alice Deakins would approach them and start with questions. Every one of Claudia Lopez's workers, and people who were working for her or helping her, was approached by Deakins in uniform, with her patrol car, and interrogated — the same workers and visitors three and four times.

57. Alice Deakins came into Claudia Lopez's driveway, in uniform, in her patrol car, and told a visitor of Claudia Lopez's that Claudia Lopez was involved in drugs. Two of the persons who were coming to the farm were told by Alice Deakins to be careful, and were asked what they were doing there, and Deakins told them that there were drugs at the farm, to stay away. There were no drugs, and no drug trafficking or drug involvement by Claudia Lopez was ever found.

58. Alice Deakins personally wrote a letter to a judge telling him that Claudia Lopez was using drugs and that there was drug movement at her house. They never found anything, because that was not the case.

59. Alice Deakins arranged for police drones to fly over Claudia Lopez's farm and watch Claudia Lopez. The property at 1455 Martin Road was surveyed with drones, and Alice Deakins patrolled the property, driving by the property.

They never found any drug trafficking or any drug involvement by Claudia Lopez.

60. Alice Deakins called in a report that brought a SWAT team into Claudia Lopez's locked house over a barking dog. The SWAT team occupied Claudia Lopez's home for about an hour while Claudia Lopez was not home.

61. Alice Deakins made approximately two hundred calls to the police about Claudia Lopez and about 1455 Martin Road.

62. On February 27, 2018, Claudia Lopez filed for an injunction against Alice Deakins for stalking, Case No. 05-2018-DR-017130.

63. On February 28, 2018, the next day, Alice Deakins filed for an injunction against Claudia Lopez for stalking, Case No. 05-2018-DR-017284, and a temporary injunction against Claudia Lopez was issued that same day.

64. Alice Deakins was represented by attorney Funk Kepler B. in both injunction cases. Claudia Lopez represented herself in both injunction cases.

65. Alice Deakins brought fake witnesses into her injunction filing.

66. On March 14, 2018, both injunction cases were heard together before Judge Kenneth Friedland. Claudia Lopez's petition was dismissed and denied. Alice Deakins's petition was granted, and an Injunction for Protection was entered against Claudia Lopez. Claudia Lopez had witnesses who were not allowed to testify. She had pictures and videos to prove the harassment, and the judge did not give her the opportunity to prove her case, leaving her with very little hope and trust in the judicial system.

67. In that injunction, the judge ordered Claudia Lopez not to get close to Alice Deakins's place of work. Alice Deakins's place of work is the Rockledge Police Department. The sworn complaint in the second injunction-violation case, Case No. 05-2020-MM-041785, also quotes the injunction as ordering Claudia Lopez not to contact the Rockledge Police Department or any of its employees.

68. Claudia Lopez moved for rehearing on March 29, 2018, and no order was ever entered on her rehearing motion.

69. Claudia Lopez moved to dissolve the injunction on November 8, 2018, and the motion to dissolve was denied the next day, November 9, 2018, with no hearing.

70. In October 2023, Claudia Lopez filed three motions of one hundred and thirty pages to vacate the injunction, and all three motions were denied the next day, October 12, 2023, by one two-page order, with no hearing.

71. Claudia Lopez's exhibits in her own injunction case were destroyed on October 4, 2023, after the Clerk's destruction notice was returned undeliverable.

72. Alice Deakins whistled to Claudia Lopez through the fence. Alice Deakins initiated contact with Claudia Lopez. Alice Deakins then filed an injunction-violation charge against Claudia Lopez, claiming that Claudia Lopez had initiated the contact.

73. Alice Deakins sat with the prosecutor at Claudia Lopez's hearings.

74. Claudia Lopez was prosecuted for violating the injunction on August 26, 2018, in Case No. 05-2018-MM-047502, and on December 11, 2018,

Claudia Lopez pleaded nolo contendere, she was found guilty, and she served thirty-one days in the county jail, with eleven days of credit.

75. When Claudia Lopez was released from jail, ICE was waiting for Claudia Lopez at the jail door. ICE detained Claudia Lopez on her release day because Alice Deakins called ICE on Claudia Lopez.

76. Claudia Lopez was prosecuted a second time for violating Alice Deakins's injunction, in Case No. 05-2020-MM-041785, for a violation on August 1, 2020, coming within five hundred feet of a home, workplace, or school. The sworn complaint in that case named Alice Deakins and the March 14, 2018 injunction. Deakins's complaint was about starting a video camera and pointing it at her house. The cameras were installed a year before, and when police arrived to check on that information, Claudia Lopez welcomed them to see the cameras, and they indeed proved that there was no camera pointing at her house. Deakins was swearing under oath, but nobody did anything, again confirming that Deakins was making up violations in order for Claudia Lopez to go to jail.

77. The second injunction-violation prosecution, Case No. 05-2020-MM-041785, ended on December 6, 2023, when the State filed a nolle prosequi and abandoned the case against Claudia Lopez, and two failure-to-appear counts against Claudia Lopez were dismissed on the same day.

78. Alice Deakins's son called the police accusing Claudia Lopez of dumping garbage at the end of the street. The police were called, and they found that nothing was done. Claudia Lopez has videos of Alice Deakins posted on her

street with the police patrol, waiting for Claudia Lopez, in civilian clothes, and the false accusations that Alice Deakins made.

**79.** Alice Deakins was a witness at Claudia Lopez's custody hearing. She lied to the judge, falsely accusing Claudia Lopez of drug use.

**80.** Alice Deakins contacted the postal service to stop Claudia Lopez getting mail.

**81.** Alice Deakins flagged Deputy Shannon Hooper down on Martin Road, identified herself as Claudia Lopez's next-door neighbor, asked Deputy Hooper about Claudia Lopez's residence, discussed a trailer and code enforcement with Deputy Hooper, and disclosed the injunction to Deputy Hooper. Deputy Hooper recorded all of that in her own affidavit, as Officer DiBiase-Deakins, ID 117. Alice Deakins told Deputy Hooper that the neighbors had rallied over Claudia Lopez's unsightly yard and had contacted code enforcement, and that code enforcement came out in March and removed the trailer.

### G. The Rockledge Police Department — its officer, its uniform and car, and its stops of Claudia Lopez

**82.** Alice Deakins is Corporal Alice Deakins, Rockledge Police Department, Department of Public Safety – Police Division, 321-690-3988 extension 3117, adeakins@rockledgepolice.org. She worked for the City of Rockledge as a police officer continuously through the 2017 to 2022 period alleged in this complaint, as alleged in paragraph 53.

**83.** Everything Alice Deakins did at Martin Road, she did outside her own department's jurisdiction, at the street where she herself lived, against her own next-door neighbor, as alleged in paragraph 25.

**84.** Alice Deakins did her acts against Claudia Lopez in the Rockledge Police Department's uniform and in the Rockledge Police Department's patrol car: she came into Claudia Lopez's driveway in uniform in her patrol car; she stopped and interrogated Claudia Lopez's workers and visitors on Claudia Lopez's property in uniform with her patrol car, the same people three and four times; she came uninvited to the farm with her patrol car and sirens from November to March; and she arrived at the neighbor's driveway in her patrol car in uniform after the eviction and yelled at Claudia Lopez to leave, as alleged in paragraphs 54–57 and 129 below.

**85.** The injunction Defendant Deakins obtained against Claudia Lopez ordered Claudia Lopez not to get close to Deakins's place of work — the Rockledge Police Department itself — and, as quoted in the sworn complaint in Case No. 05-2020-MM-041785, not to contact the Rockledge Police Department or any of its employees, as alleged in paragraph 67. The Department was thus made, by the injunction its own corporal obtained, the protected workplace at the center of the two prosecutions of Claudia Lopez alleged in paragraphs 74 and 76–77.

**86.** The Rockledge Police Department was also the department through which Alice Deakins was copied as a witness in Claudia Lopez's animal cases: in Case No. 05-2019-IN-003076, the papers copy Witness Corporal Deakins, ID

#117, Rockledge Police Department; the January 27, 2020 hearing was cancelled on Corporal Deakins's voicemail of unavailability; and Alice Deakins was subpoenaed at 1776 Jack Oates Boulevard, Rockledge, the Rockledge Police Department's address, as alleged in paragraph 51.

**87.** Alice Deakins's employment with the City of Rockledge covers the entire period of the acts alleged in this complaint — 2017, 2019, and 2021 through 2024, as alleged in paragraph 53 — including every year in which the acts alleged in Parts IV.F through V.K occurred. At no point in that period was she a deputy of the Brevard County Sheriff's Office; the uniform she wore, the patrol car she drove, and the identification she carried were the City of Rockledge's.

**88.** Rockledge Police Department officers stopped Claudia Lopez two times and searched Claudia Lopez's car, looking for drugs.

**89.** The Rockledge Police Department officers found nothing. There were no drugs.

### H. Deputy Shannon Hooper — the burglary report, the recorded calls, and the arrest of Claudia Lopez

**90.** In the spring of 2022, Claudia Lopez had a motorcycle accident, and she was hospitalised for eight days.

**91.** When Claudia Lopez came home to 1455 Martin Road, she found that some of her belongings had been taken by Jeffery Reid, a person who had access to her house. The items taken included chainsaws and a Cricut machine.

92. Claudia Lopez was contacted by Caras Cicale, and Cicale told her where Jeffery Reid was and to whom he had sold her Cricut machine. Claudia Lopez told Cicale that she would call back to gather that information to make a report. Claudia Lopez called back and recorded the conversation, because both of her hands were wounded. There was no interception of any communication: Claudia Lopez was a party to the calls she recorded.

93. Claudia Lopez called to report the event. Deputy Shannon Hooper, Badge 4612, of the Brevard County Sheriff's Office, agency case 2022-00144496, came to take Claudia Lopez's report.

94. While Deputy Hooper was taking Claudia Lopez's report, Claudia Lopez took her phone out and had Deputy Hooper listen to the call so she could write down the information. Deputy Hooper told Claudia Lopez that that was illegal. Claudia Lopez told her that the information was not expected to be private and therefore was not illegal.

95. Claudia Lopez mentioned the things that were missing. One of them was a trailer. Deputy Hooper told her that she could do nothing, since the trailer was not registered. Claudia Lopez later found out that Deputy Hooper already knew about the trailer, from Alice Deakins and code enforcement. Deputy Hooper needed to leave and demanded that Claudia Lopez sign a blank affidavit.

96. Claudia Lopez refused to sign the blank affidavit, and asked Deputy Hooper to come back when she had time. Deputy Hooper never came back, and the stolen property was not recovered. Jeffery Reid, the one who took the

property, had an active warrant at that time. Caras Cicale and Jason Cripps worked together; they do not live together.

97. About two weeks later, Deputy Hooper arrived at the farm early in the morning. Claudia Lopez opened the door. Deputy Hooper told her she had good news about her trailer. Claudia Lopez opened the door, and she was handcuffed, for interception of a communication device.

98. Deputy Hooper contacted Caras Cicale, Jason Cripps, and Jeffery Reid, and manipulated them, with insinuations that the call was private, and by lying to them by telling them that Claudia Lopez wanted the three of them arrested.

99. Deputy Hooper offered to ignore Jeffery Reid's warrant if Jeffery Reid signed a complaint against Claudia Lopez.

100. Jeffery Reid, Jason Cripps, and Caras Cicale each gave affidavits stating that a female officer called them and manipulated the story so that they would agree.

101. Deputy Hooper arrested Claudia Lopez outside her home, with no warrant, for recording the calls. Claudia Lopez was arrested on April 25, 2022, in the recording case. The arrest is on video.

102. During the transport on Interstate 95, Deputy Hooper texted and used her computer while driving, and Claudia Lopez warned her repeatedly that by doing that she was putting her life in danger, and to stop. Deputy Hooper dismissed her concern.

**103.** Deputy Hooper signed an original arrest affidavit on May 13, 2022, with a very brief statement, just enough to justify the arrest. A second, different capias affidavit was filed on September 16, 2022, Filing 157607792, and the two affidavits do not contain the same information. The passage about Alice Deakins flagging Deputy Hooper down on Martin Road is in the second affidavit, the capias affidavit of September 16, 2022, not in the arrest affidavit of May 13, 2022.

**104.** Claudia Lopez's recording case, Case No. 05-2022-CF-027783, was filed on May 13, 2022. She was charged with intercepting the wire portion of a cell or cordless phone, reduced from a felony interception charge.

**105.** Two failure-to-appear counts were filed against Claudia Lopez in Case No. 05-2022-CF-027783, for court dates that she was never notified of, and she was arrested again on those failure-to-appear counts. The notice of the January 4, 2023 calendar call was mailed to 1455 Martin Road after Claudia Lopez had been put out of that home, and it was returned undeliverable.

**106.** On May 4, 2023, in Case No. 05-2022-CF-027783, Claudia Lopez pleaded nolo contendere to the reduced charge, adjudication was withheld, she was fined and assessed $719 in costs, and the two failure-to-appear counts against her were dismissed. It was a case invented by Deputy Hooper.

**107.** After the April 2022 arrest, Claudia Lopez went in person to the Brevard County Sheriff's Office and made an Internal Affairs complaint about Deputy Hooper's arrest of her. She was ignored and sent away. After the

November 2022 arrest described below, she again went in person and made an Internal Affairs complaint, and she was again ignored and sent away.

### I. Pattern and profiling

**108.** The acts alleged in Parts IV.B through V.H, and in Parts IV.J through V.L below, are part of one course of conduct directed at Claudia Lopez at her home at 1455 Martin Road: approximately two hundred calls by Alice Deakins to the police about Claudia Lopez; Animal Control visiting the farm as if it was theirs; deputies monitoring the farm; two stops of Claudia Lopez by Rockledge Police Department officers and a search of her car for drugs that found nothing; and two arrests of Claudia Lopez by Brevard County Sheriff's deputies in 2022, each arising out of her own call for help — first her burglary report, then her 911 call.

**109.** Claudia Lopez was told by her custody attorney, Attorney Hernandez, that Sheriff's deputies had told him personally that they were watching her.

**110.** Claudia Lopez was arrested in front of her children, as alleged in paragraph 139 below.

**111.** After the eviction described below, when Claudia Lopez was parked on the street watching her property, a patrol officer told her, "Claudia, I know what you are doing, you are going to call your daughter to help you get the property." Claudia Lopez sent them away. That is on video.

**112.** The same lieutenant who oversaw the trespassing of Claudia Lopez later arrived in his patrol car. The lieutenant did not approach Claudia Lopez. Alice Deakins met them, they talked briefly, and they left.

**113.** They profiled, harassed, and slandered and libelled Claudia Lopez.

**114.** Acts alleged in this complaint for which no separate count is pleaded — including the removal of yard sale signs, the statements to visitors and workers, the drone surveillance, the SWAT entry, the cutting of the fence as a standalone act by Deakins, the 2018 injunction-violation prosecution in Case No. 05-2018-MM-047502, the ICE detention at the jail door on Alice Deakins's call, Deakins's statements at the custody hearing, Deakins's contact with the postal service about Plaintiff's mail, the demand that Plaintiff sign a blank affidavit, and the transport on Interstate 95 — are pleaded as background and pattern evidence of motive, intent, profiling, notice, and custom in support of the counts that are pleaded, and Plaintiff does not seek separate damages for those acts as independent claims.

### J. October 28, 2022 — Plaintiff is put out of her home, and the taking of her cat

**115.** When Brevard County Sheriff's deputies came to 1455 Martin Road the first time with a writ of possession, Claudia Lopez told the deputies that a federal case was active and that her constitutional rights were being violated. The deputies called the court. The deputies left. That writ was not executed, and that

writ was returned unexecuted on October 7, 2022. The first writ of possession had issued on September 21, 2022.

**116.** Claudia Lopez put the Sheriff's Office on notice that executing the writ would trespass on her constitutional rights. Claudia Lopez personally sent the Sheriff a letter asking him to help her. Claudia Lopez never got an answer from the Sheriff.

**117.** After the first eviction attempt, Claudia Lopez went and talked with the Sheriff's civil process office. Claudia Lopez talked with the supervisor. The supervisor told Claudia Lopez that they could not do anything, that an order is an order.

**118.** On October 28, 2022, at 11:00 in the morning, three Brevard County Sheriff's deputies and property management staff executed the writ of possession at 1455 Martin Road. Claudia Lopez was put out of 1455 Martin Road on October 28, 2022. Claudia Lopez was the person living at 1455 Martin Road on October 28, 2022.

**119.** At the execution on October 28, 2022, Claudia Lopez gave the deputies oral notice of the rights violations, of the lack of standing, of the federal lawsuit, and of the appeal.

**120.** Alice Deakins inserted herself into the eviction at 1455 Martin Road on October 28, 2022, acting as the lead in the eviction. Ronald Huff's affidavit of September 21, 2023 states that Alice Deakins inserted herself into the 1455 Martin Road eviction acting as though she were the lead.

**121.** On October 28, 2022, Claudia Lopez left her cat behind at 1455 Martin Road. When Claudia Lopez was trespassed, she was told that she had no time to get her cat.

**122.** Claudia Lopez called Brevard County Animal Control for help retrieving her cat.

**123.** Brevard County Animal Control told Claudia Lopez that there was no cat there. Brevard County Animal Control had gotten Claudia Lopez's cat, so Brevard County Animal Control lied to Claudia Lopez.

**124.** The writ executed on October 28, 2022 was returned served on November 1, 2022.

**125.** On April 25, 2024, Claudia Lopez sent a request under Chapter 119, Florida Statutes, to the Brevard County Sheriff's Office for the Sheriff's civil-process file on the October 28, 2022 execution, and no response to that request is in her papers.

## K. Deputy Christian Portocarrero — the 911 arrest on November 1, 2022, and the taking of the Bose 350 headset

**126.** After the eviction, Claudia Lopez spent the night packing her property. On the morning of October 29, 2022, after she had been packing all night, Alice Deakins patrolled the house at 1455 Martin Road. A video shows Deakins patrolling the house that morning.

**127.** Later in the day on October 29, 2022, Alice Deakins used her relationship with All Florida Property Management to get Claudia Lopez

trespassed from 1455 Martin Road. That led Claudia Lopez to lose every single piece of property she owned.

**128.** Ronald Huff texted Alice Deakins the day after the eviction and told her not to touch Claudia Lopez's property. Alice Deakins replied that the property was not Claudia Lopez's anymore. Ronald Huff's text and Deakins's reply are in a text message.

**129.** After the eviction, Claudia Lopez went back to watch her property. She knocked on a neighbor's door to tell the neighbor that she would be parked in front of the neighbor's house. Alice Deakins arrived at that neighbor's driveway in her patrol car, in uniform, and yelled at Claudia Lopez to leave, and told her that the owner did not want her there. The owner did not say that. Claudia Lopez later confirmed that the owner's position was not what Deakins said it was. That incident is on video.

**130.** Claudia Lopez parked on the street in hopes that they would let her get her property. A dumpster was on the property at 1455 Martin Road. Sheriffs arrived to check on her, called by Alice Deakins, and a deputy accused her of planning to get into the house to gather her property. That is on video. Deakins was driving up and down the road while this happened.

**131.** The sheriffs left, and soon after that a property manager truck arrived and parked at the neighbor's house, and soon after that Alice Deakins joined them in her patrol car. The owner of the neighbor's house arrived after some time, they talked, and both Deakins and the property manager left. Claudia Lopez approached the owner, and then confirmed that Deakins had taken it upon

herself to approach her and tell her to leave the house. Claudia Lopez asked the owner if it was okay to drive her car in her yard, in case her son, who was planning on going with his dad to retrieve the boat, could pass her some of her property. The owner was okay with that.

132. On November 1, 2022, Claudia Lopez learned that her ex-husband was picking up the boat. She talked to him, and he told her to come there before Alice Deakins finished getting everything, because Deakins had already taken trailers, furniture, tools, materials, and roof material — everything — and Deakins had people helping her gather Claudia Lopez's property.

133. Claudia Lopez went and parked her car next to the farm at 1455 Martin Road, on the property line, with the owner's permission, and her son was going to help her get some bags of her property. Before he could do it, the police were already there, and the operation was led by Alice Deakins.

134. Alice Deakins was already there, waiting, when the police arrived on November 1, 2022, and she was yelling from the street about custody. While Claudia Lopez was talking with the officers, with her child present, the officers told her son that if he helped her they would arrest him, all while Deakins was on the street telling them that Claudia Lopez had no custody of her child and not to let her get anything that was not hers.

135. Claudia Lopez told the police what she was doing. The police asked her to leave and said she was trespassing. She told them she had permission. They went to confirm, but they were harassing her, so she called 911 to ask for help.

**136.** The officers yelled at Claudia Lopez to hang up the 911 call while the officers talked with Alice Deakins, and the officers then came and arrested her.

**137.** Deputy Christian Portocarrero, Badge 4789, of the Brevard County Sheriff's Office, agency case 2022-00380721, arrested Claudia Lopez on November 1, 2022, for misuse of 911.

**138.** While Claudia Lopez was handcuffed, and with all the stress, she felt ill and asked for help. She nearly fainted, and she had difficulty breathing. An ambulance arrived, and Deputy Portocarrero ordered the ambulance away, denying her access to the paramedics, without her being treated.

**139.** Claudia Lopez's minor child was present on November 1, 2022, and witnessed her arrest.

**140.** While she was handcuffed, Deputy Portocarrero took her Bose 350 headset and put it on himself. Deputy Portocarrero seized the headset and dropped it. Deputy Portocarrero never returned Claudia Lopez's Bose 350 headset, and it was not on her property when she got back.

**141.** Claudia Lopez's 911 case, Case No. 05-2022-MM-051352, was filed on November 1, 2022, and on November 15, 2022, the prosecutor dropped her 911 case and filed a Notice of No Information. The case was dismissed.

**L. Property management — the conversion of Claudia Lopez's property, and of Ronald Huff's property**

**142.** Property management staff were present with the three Brevard County Sheriff's deputies at 1455 Martin Road on October 28, 2022, when Claudia Lopez was put out of her home, as alleged in paragraph 118.

**143.** Claudia Lopez and her parents reached terms on October 28, 2022 with attorney Tyler Mesmer about removing the family's belongings from 1455 Martin Road: the family was given twenty-four hours, and the family requested fifteen days.

**144.** Claudia Lopez's property was placed in the courtyard, not on the street, and her property all got put in a dumpster.

**145.** No notice under Florida Statutes §§ 715.10–715.105 was ever given to Claudia Lopez for the personal property at 1455 Martin Road. No storage record for that personal property ever existed. No record of a sale of that personal property ever existed. To this day, Claudia Lopez has received no notice of where her property is located.

**146.** That night, October 28, 2022, after she reached terms with the attorney, Claudia Lopez went at night and gathered her property. The next morning she went with Ronald Huff for breakfast. When they came back from breakfast, a big U-Haul was parked in the driveway. Her ex-husband was there. She was never notified that he was coming. She had not talked to him for three years. She called the police. The police arrived, and Alice Deakins immediately greeted them. Claudia Lopez was still packing, putting things on the trailer. The

police came and told her to stop talking. After one hour, they came back and told her to put everything that was on her car down, that she was not allowed to take anything. They trespassed her and her husband.

**147.** Claudia Lopez went to the Sheriff's department office to talk with supervisors, to ask them why they did not protect her, because she thought that was her property, and the property was not put on the street; instead it was in the courtyard, making it impossible to retrieve.

**148.** On October 28, 2022, Claudia Lopez and Ronald Huff spent the night bagging and packing her property. Her china, glass, and art collection were broken, and her Italian leather furniture was destroyed.

**149.** On Saturday, October 29, 2022, the police were called at 11 o'clock, to confirm she was there, after the arrangement with the attorney. Property management ordered the trespass. Claudia Lopez was trespassed at 4 o'clock in the afternoon. Matthew Davis was trespassed with her. Matthew Davis's trespass was lifted the next day, and he left with her property, including the boat.

**150.** At 4:30 in the afternoon on Saturday, October 29, 2022, by order of All Florida Management, a dumpster crew began throwing Claudia Lopez's property into a dumpster.

**151.** On Sunday, October 30, 2022, Claudia Lopez, trespassed and denied entry to her property, confirmed the dumpster, on video from a neighbor's front street, as her property was put in the dumpster.

**152.** On October 31, 2022, Claudia Lopez emailed and texted the property management company. Several emails to property management and to the

attorney were sent. The property management company never replied. A motion to the court was filed, and it was denied.

**153.** Property management denied Claudia Lopez access to her property when she called.

**154.** Claudia Lopez's tractor was taken. Her lawn mower was taken. Her three trailers were taken. Her three motorcycles were taken. Her 1971 Volkswagen convertible was taken. Her horse trailer was taken. Her Sea Ray boat was taken.

**155.** Claudia Lopez also lost furniture, tools, materials, and roof material, as alleged in paragraph 132. Claudia Lopez's total property loss was around $800,000.

**156.** Ronald Huff kept his property at 1455 Martin Road with Claudia Lopez's consent — an adult trailer worth about $10,000, a garden trailer worth about $10,000, and garden tools and equipment — and Ronald Huff's property was taken, and his total loss is about $25,000. Ronald Huff received no written notice and no verbal notice of the removal, storage, or disposal of his property, and he was given no opportunity to retrieve it. Ronald Huff is not a plaintiff in this action; his property and his affidavit are alleged here as part of the same course of conduct and as corroboration of the absence of any notice, and Plaintiff seeks no damages for Ronald Huff's property in this action.

**157.** Claudia Lopez lost her animals to Brevard County Animal Control, as alleged in Parts IV.B through V.E. She was arrested by Deputy Shannon Hooper and by Deputy Christian Portocarrero, as alleged in Parts IV.H and V.K, and

Deputy Portocarrero took her Bose 350 headset and never returned it. Alice Deakins carried out the acts alleged in Part IV.F and Parts IV.J through V.K. Property management took and disposed of her property, as alleged in this Part, with no notice of where the property is. What was done to Claudia Lopez caused her severe emotional distress: the years of being watched, interrogated at her own gate, and falsely accused of drugs; the humiliation of being arrested in front of her child on November 1, 2022; the loss of her cat; and watching the contents of her home and her farm — the things of a lifetime — thrown into a dumpster and carried away while she was kept at the road. Claudia Lopez lost her home, her means of working, and the place where her children could visit her.

## V. COUNTS

### COUNT I — False Arrest, 42 U.S.C. § 1983, Fourth Amendment

**Plaintiff v. Deputy Christian Portocarrero**

**158.** Plaintiff incorporates paragraphs 1–17 and 126–141, and paragraph 157.

**159.** On November 1, 2022, Plaintiff was parked on the property line at 1455 Martin Road with the property owner's permission, as alleged in paragraphs 131 and 133. She called 911 to ask for help during the encounter described in paragraphs 133–136.

**160.** Defendant Portocarrero arrested Plaintiff on November 1, 2022, for misuse of 911, as alleged in paragraph 137. Plaintiff's act of calling 911 for help, from a place she had permission to be, while officers were talking with

Defendant Deakins and yelling at her to hang up, did not supply probable cause to arrest her for misuse of 911.

**161.** Defendant Portocarrero acted under color of the laws of the State of Florida and of Brevard County. His arrest of Plaintiff was a seizure without probable cause and without a warrant, in violation of the Fourth Amendment.

**162.** As a direct result, Plaintiff was handcuffed, seized, taken into custody, and prosecuted in Case No. 05-2022-MM-051352, and suffered loss of liberty, humiliation in front of her minor child, and emotional distress.

**COUNT II — Malicious Prosecution, 42 U.S.C. § 1983, Fourth Amendment**

**Plaintiff v. Deputy Christian Portocarrero**

**163.** Plaintiff incorporates paragraphs 1–17 and 126–141, and paragraph 157.

**164.** Defendant Portocarrero instituted, and caused the continuation of, the criminal prosecution of Plaintiff in Case No. 05-2022-MM-051352, agency case 2022-00380721, for misuse of 911, by arresting her on November 1, 2022 and by the arrest paperwork he made in that case.

**165.** The prosecution lacked probable cause, for the reasons alleged in paragraph 160, and was instituted with malice, as shown by the circumstances alleged in paragraphs 133–138: Plaintiff was arrested for the 911 call she made asking for help, after being ordered to hang it up, while Defendant Deakins stood in the street directing the officers against her.

**166.** The prosecution terminated in Plaintiff's favor and without a conviction: on November 15, 2022, the prosecutor dropped the case and filed a Notice of No Information, as alleged in paragraph 141. Plaintiff entered no plea in that case. Under *Thompson v. Clark*, 596 U.S. 36 (2022), a Fourth Amendment malicious-prosecution claim requires only that the prosecution ended without a conviction; a plaintiff need not show an affirmative indication of innocence, and under *Chiaverini v. City of Napoleon*, 602 U.S. 386 (2024), the inquiry is charge by charge. This prosecution ended without a conviction, without a plea, and without any adjudication of guilt on any charge.

**167.** As a direct result, Plaintiff suffered loss of liberty, the burden of a criminal prosecution, and emotional distress.

## COUNT III — Deliberate Indifference to Serious Medical Needs, 42 U.S.C. § 1983, Fourteenth Amendment

**Plaintiff v. Deputy Christian Portocarrero**

**168.** Plaintiff incorporates paragraphs 1–17 and 126–141, and paragraph 157.

**169.** At the time of her arrest on November 1, 2022, Plaintiff was in Defendant Portocarrero's custody, handcuffed, as alleged in paragraph 138.

**170.** Plaintiff nearly fainted, had difficulty breathing, felt ill, and asked for help. An ambulance arrived at the scene.

**171.** Defendant Portocarrero ordered the ambulance away without Plaintiff being treated, denying her access to the paramedics, as alleged in paragraph 138. He did so with deliberate indifference to her serious medical needs.

**172.** As a direct result, Plaintiff was denied medical care at the scene and suffered physical distress and emotional distress.

## COUNT IV — Unreasonable Seizure of Property, 42 U.S.C. § 1983, Fourth Amendment

**Plaintiff v. Deputy Christian Portocarrero**

**173.** Plaintiff incorporates paragraphs 1–17 and 137–141, and paragraph 157.

**174.** During the November 1, 2022 arrest, Defendant Portocarrero seized Plaintiff's Bose 350 headset, put it on himself, and dropped it, as alleged in paragraph 140.

**175.** The headset was never returned to Plaintiff, was never returned to her property, and no receipt, property log, or accounting for it was given to her.

**176.** The seizure and permanent retention of Plaintiff's headset, without legal justification and without any process for its return, violated the Fourth Amendment. An officer's seizure of a citizen's personal property during an encounter is an independent Fourth Amendment claim, distinct from the lawfulness of the arrest itself. Faile v. City of Leesburg, No. 23-11465 (11th Cir. May 14, 2024) (officer's towing and seizure of the plaintiff's vehicle during the encounter sustained as an independent claim).

## COUNT V — Retaliation for Calling 911, 42 U.S.C. § 1983, First Amendment

**Plaintiff v. Deputy Christian Portocarrero**

**177.** Plaintiff incorporates paragraphs 1–17 and 126–141, and paragraph 157.

**178.** Plaintiff engaged in constitutionally protected activity when she called 911 on November 1, 2022 to ask law enforcement for help, as alleged in paragraph 135.

**179.** The officers at the scene yelled at Plaintiff to hang up the 911 call, and Defendant Portocarrero then arrested her for misuse of 911, as alleged in paragraphs 136–137.

**180.** Plaintiff's 911 call was a substantial and motivating factor in her arrest. But for the call, she would not have been arrested on a charge of misusing 911.

**181.** As a direct result, Plaintiff suffered loss of liberty and the chilling of her right to seek help from law enforcement.

## COUNT VI — Fabrication of Evidence, 42 U.S.C. § 1983, Fourteenth Amendment

**Plaintiff v. Deputy Shannon Hooper**

**182.** Plaintiff incorporates paragraphs 1–17 and 90–107, and paragraph 157.

**183.** Plaintiff came to Defendant Hooper as the victim reporting a burglary of her own home, as alleged in paragraphs 91–96. Defendant Hooper demanded

that Plaintiff sign a blank affidavit, Plaintiff refused, and Defendant Hooper never returned to complete the burglary report and never recovered Plaintiff's stolen property.

**184.** Defendant Hooper contacted the three people Plaintiff had accused — Jeffery Reid, Jason Cripps, and Caras Cicale — and manipulated them, with insinuations that Plaintiff's recorded call was private and by telling them that Plaintiff wanted the three of them arrested, as alleged in paragraph 98. She offered to ignore Jeffery Reid's active warrant if he signed a complaint against Plaintiff, as alleged in paragraph 99.

**185.** Reid, Cripps, and Cicale each gave affidavits stating that a female officer called them and manipulated the story so that they would agree, as alleged in paragraph 100.

**186.** On the complaints so obtained, Defendant Hooper arrested Plaintiff on April 25, 2022, without a warrant, and signed an arrest affidavit on May 13, 2022. A second, different capias affidavit filed on September 16, 2022 does not contain the same information as the May 13, 2022 affidavit, as alleged in paragraph 103. Sworn affidavits that contradict each other, and that rest on complaints the affiant herself obtained by manipulation, do not establish arguable probable cause; an affidavit that misdescribes the evidence it relies on defeats it. Faile v. City of Leesburg, No. 23-11465 (11th Cir. May 14, 2024).

**187.** The prosecution begun by Defendant Hooper, Case No. 05-2022-CF-027783, ended on May 4, 2023, as alleged in paragraph 106. Plaintiff brings this fabrication claim on the termination of that prosecution, and on the affidavits

of Reid, Cripps, and Cicale described in paragraph 100. This fabrication claim, and the false-arrest conduct alleged with it, do not depend on treating the plea in that case as a favorable termination: claims other than malicious prosecution are not barred by a plea, even where the plea is treated as a conviction. Raymond v. Hillsborough County, No. 24-14124 (11th Cir. Aug. 20, 2025). As a direct result of the fabricated complaints, Plaintiff was arrested, prosecuted for over a year, arrested again on failure-to-appear counts for court dates she was never notified of, and suffered loss of liberty and emotional distress.

## COUNT VII — Malicious Prosecution, 42 U.S.C. § 1983, Fourth Amendment

**Plaintiff v. Deputy Shannon Hooper**

**188.** Plaintiff incorporates paragraphs 1–17 and 90–107, and paragraph 157.

**189.** Defendant Hooper instituted, and caused the continuation of, the prosecution of Plaintiff in Case No. 05-2022-CF-027783, by the conduct alleged in paragraphs 97–105 and in Count VI.

**190.** The prosecution lacked probable cause. Plaintiff's recorded call was made to gather, for a burglary report, information from Caras Cicale, who had first contacted Plaintiff and told her where her stolen property had gone, and Plaintiff played the call openly to Defendant Hooper herself while Hooper took the report, as alleged in paragraphs 92–94. The complaints that supplied the charge were obtained by the manipulation alleged in paragraphs 98–100.

**191.** The prosecution was instituted with malice, as shown by the blank-affidavit demand and Plaintiff's refusal, the failure ever to complete Plaintiff's burglary report or recover her property, the offer to ignore Reid's warrant, and the manipulation of the three witnesses, as alleged in paragraphs 95–100.

**192.** The prosecution ended on May 4, 2023 with adjudication withheld on a nolo contendere plea to a reduced charge and with the two failure-to-appear counts dismissed, as alleged in paragraph 106. Plaintiff brings this claim on that termination and on the fraud and corrupt means by which the prosecution was obtained, as alleged in Count VI. Plaintiff pleads the termination with candor about its form: because adjudication was withheld, no conviction was entered on the plea under Florida law, the remaining counts were dismissed outright, and under *Thompson v. Clark*, 596 U.S. 36 (2022), a malicious-prosecution claim requires a prosecution that ended without a conviction. Plaintiff acknowledges the Eleventh Circuit's rule that a Florida nolo contendere plea is treated as a conviction, Stephens v. DeGiovanni, 852 F.3d 1298, 1319 (11th Cir. 2017), applied in Raymond v. Hillsborough County, No. 24-14124 (11th Cir. Aug. 20, 2025); no decision Plaintiff has located squarely decides whether that rule reaches a plea on which adjudication was withheld, and Plaintiff pleads the withheld adjudication, the dismissed counts, and the fraud in the obtaining of the prosecution so that this count may be judged on all three. In the alternative, if this count is held barred by the plea, Count VI (fabrication) and the false-arrest conduct alleged in it stand independently, as Raymond holds claims other than malicious prosecution are not barred. Plaintiff pleads this count in the alternative

to Count VI, and she does not present it as equally secure as Count II, which rests on a prosecution that ended by a Notice of No Information, with no plea of any kind. As a direct result, Plaintiff suffered loss of liberty, the burden of a year-long felony prosecution reduced at its end, fines and costs of $719, and emotional distress.

## COUNT VIII — Malicious Prosecution and Fabrication of Evidence, 42 U.S.C. § 1983, Fourth and Fourteenth Amendments

**Plaintiff v. Alice DiBiase Deakins**

**193.** Plaintiff incorporates paragraphs 1–17 and 52–81, and paragraph 157.

**194.** Defendant Deakins made the sworn complaint behind the second injunction-violation prosecution of Plaintiff, Case No. 05-2020-MM-041785. Her complaint was that Plaintiff had started a video camera and pointed it at Deakins's house, as alleged in paragraph 76. The injunction behind that prosecution was the March 14, 2018 injunction Defendant Deakins had obtained, which barred Plaintiff from coming close to Deakins's place of work — the Rockledge Police Department — and, as the sworn complaint in that very case quotes it, barred Plaintiff from contacting the Rockledge Police Department or any of its employees, as alleged in paragraphs 67 and 85. The prosecution Deakins set in motion thus rested on an injunction that placed her own police department off-limits to Plaintiff.

**195.** The cameras had been installed a year before. When police arrived to check Deakins's information, Plaintiff welcomed them to see the cameras, and

they proved that no camera was pointing at Deakins's house, as alleged in paragraph 76. Deakins's sworn complaint therefore asserted as fact the opposite of what the officers' own inspection showed at the time. A sworn statement that misdescribes the very evidence it rests on defeats arguable probable cause. Faile v. City of Leesburg, No. 23-11465 (11th Cir. May 14, 2024).

**196.** That prosecution terminated in Plaintiff's favor and without a conviction: on December 6, 2023, the State filed a nolle prosequi and abandoned the case, and the two failure-to-appear counts were dismissed the same day, as alleged in paragraph 77. A nolle prosequi and outright dismissals end a prosecution without a conviction within the rule of *Thompson v. Clark*, 596 U.S. 36 (2022), and the termination is measured charge by charge under *Chiaverini v. City of Napoleon*, 602 U.S. 386 (2024): every charge in that case ended without a conviction.

**197.** As a direct result, Plaintiff lived under a criminal prosecution from 2020 to December 6, 2023, and suffered emotional distress and loss of liberty on the counts in that case.

**COUNT IX — Conspiracy and Joint Participation, 42 U.S.C. § 1983**

**Plaintiff v. Alice DiBiase Deakins, Deputy Shannon Hooper, and Deputy Christian Portocarrero**

**198.** Plaintiff incorporates paragraphs 1–17 and 52–81, 90–107, and 115–141, and paragraph 157.

**199.** Defendant Deakins, although a Rockledge Police Department officer and not a Brevard County deputy, acted jointly with, and in agreement with, Brevard County Sheriff's deputies in the acts alleged in this count, and so acted under color of law. The agreement and the common objective are shown by the acts alleged in paragraphs 200–202: a Sheriff's investigation opened to the neighbor-officer who flagged the deputy down and supplied her with the injunction, the trailer, and the code-enforcement history, which the deputy's own later affidavit ties to this case; an eviction led on the ground by that same officer, in coordination with the deputies executing the writ and with the property management that trespassed Plaintiff the next day; and an arrest carried out by deputies who conferred with that officer at the scene and then did what she was urging from the street — that Plaintiff be kept from her property and taken away. The common objective was to use the processes of the Sheriff's Office — the burglary investigation, the execution of the writ, and the response to Plaintiff's own 911 call — to remove Plaintiff from her home and her property and to keep her from recovering them.

**200.** As to Deputy Hooper: Defendant Deakins flagged Deputy Hooper down on Martin Road, asked her about Plaintiff's residence, discussed a trailer and code enforcement, and disclosed the injunction, and Deputy Hooper recorded Defendant Deakins doing so in her own affidavit, as alleged in paragraph 81. Defendant Deakins thereby inserted herself, as the neighbor with a personal conflict with Plaintiff and as the petitioner in the injunction against her, into the investigation that produced Plaintiff's April 25, 2022 arrest.

**201.** As to Deputy Portocarrero: Defendant Deakins led the operation at 1455 Martin Road on November 1, 2022, was already waiting when the police arrived, yelled from the street about custody, told the officers that Plaintiff had no custody of her child and not to let her get anything that was not hers, and the officers talked with Defendant Deakins and then arrested Plaintiff for the 911 call she had made for help, as alleged in paragraphs 132–137.

**202.** As to the eviction: Defendant Deakins inserted herself into the October 28, 2022 eviction acting as its lead, used her relationship with the property management to get Plaintiff trespassed on October 29, 2022, told Ronald Huff that Plaintiff's property was not hers anymore, arrived in her patrol car in uniform at the neighbor's driveway and ordered Plaintiff to leave on a statement about the owner that was not true, and gathered Plaintiff's property with people helping her, as alleged in paragraphs 120 and 126–132.

**203.** As a direct result of the joint conduct alleged in this count, Plaintiff was arrested on April 25, 2022 and on November 1, 2022, and lost her property in the eviction week.

## COUNT X — Unreasonable Seizure and Deprivation of Property Without Due Process, 42 U.S.C. § 1983, Fourth and Fourteenth Amendments

**Plaintiff v. Brevard County, Florida, and Wayne Ivey, in his official capacity as Sheriff of Brevard County**

**204.** Plaintiff incorporates paragraphs 1–17 and 18–51 and 121–123, and paragraph 157.

**205.** On or about December 21, 2017, animal control officers entered Plaintiff's home property at 1455 Martin Road without a warrant and without her consent, while she was not home, and seized her animals, as alleged in paragraphs 28–29.

**206.** Plaintiff was given no information about her own animals, was told she was not allowed information, was denied a final visit with her mare Camilla, and the mare was euthanized in early January 2018 over her objection, as alleged in paragraphs 30–38.

**207.** In early 2018, animal control officers took Plaintiff's last horse after it got out through the cut fence, and gave her no notice, no location, and no opportunity to pick the horse up or to cure, as alleged in paragraph 43.

**208.** In June and July 2018, the animals in the custody of Brevard County Animal Services were forfeited, first by a plea term for the animals in custody, then by an order reaching all animals Plaintiff currently owned, then by an amended order narrowed back to the animals then in custody, as alleged in paragraphs 44–46. No document names which animals were in custody, and no petition, notice, or hearing under Florida Statutes § 828.073, no impound record, and no euthanasia record exists in any of the court files, as alleged in paragraphs 41 and 47.

**209.** On October 28, 2022, animal control took Plaintiff's cat from 1455 Martin Road, and then told Plaintiff that there was no cat there, as alleged in paragraphs 121–123.

**210.** The seizures, the killing of the mare, the forfeiture of animals never identified in any document, and the taking of the cat were done under color of law, without a warrant, without the petition, notice, and hearing process of Florida Statutes § 828.073, and without due process of law. Animals are "effects" within the Fourth Amendment, and their seizure and destruction by government officers is a seizure of the owner's property. Brown v. Muhlenberg Township, 269 F.3d 205 (3d Cir. 2001).[5] A jury has found a government animal agency liable under § 1983, on Fourth and Fourteenth Amendment grounds, for euthanizing an owner's seized animals after the charges against the owner were dropped and after the owner came to reclaim them, with inadequate procedures to safeguard the property interest. Snead v. Society for Prevention of Cruelty to Animals of Pennsylvania, 2007 PA Super 204. As a direct result, Plaintiff lost her animals, including a mare she had kept into the mare's old age, and suffered severe depression and emotional distress, as alleged in paragraph 39.

---

5. *Siebert v. Severino*, 256 F.3d 648 (7th Cir. 2001) — summary judgment for a state agriculture investigator reversed, and qualified immunity denied, where the investigator entered a fenced paddock and barn without a warrant and seized three horses without a hearing: "The removal of an animal constitutes a 'seizure' for purposes of the Fourth Amendment, and thus such a seizure must meet that Amendment's constitutional requirements"; "at a minimum [the owner] had the right to some sort of pre-deprivation opportunity to be heard." Plaintiff acknowledges the adverse authority in this Circuit, *Reams v. Irvin*, 561 F.3d 1258 (11th Cir. 2009), where a pre-deprivation hearing was not required for the impoundment of horses — in a case where the officials held an inspection warrant, a federal veterinarian personally assessed the animals, and the State largely complied with its statutory procedures, none of which is present here; the *Reams* court itself distinguished *Siebert* on the risk of erroneous deprivation where the person judging the animals' condition "apparently lacked sufficient knowledge about horses."

**COUNT XI — Municipal and Official-Capacity Liability, 42 U.S.C. § 1983**

**Plaintiff v. Wayne Ivey, in his official capacity as Sheriff of Brevard County, Florida**

**211.** Plaintiff incorporates paragraphs 1–17 and 90–107 and 115–141, and paragraph 157.

**212.** Defendant Ivey is the final policymaker for the Brevard County Sheriff's Office for law enforcement in Brevard County.

**213.** Plaintiff made an Internal Affairs complaint in person after Deputy Hooper arrested her in April 2022, and she was ignored and sent away. She made an Internal Affairs complaint in person again after Deputy Portocarrero arrested her in November 2022, and she was again ignored and sent away, as alleged in paragraph 107.

**214.** Between those two ignored complaints, the same agency arrested Plaintiff a second time, on November 1, 2022, for calling 911 for help. The sequence alleged in this complaint — a burglary victim arrested by the deputy taking her report, on complaints that deputy obtained from the people the victim accused; an Internal Affairs complaint ignored; the same citizen arrested again for a 911 call, denied medical care at the scene, and stripped of her headset, which was never returned; a second Internal Affairs complaint ignored — was the result of the Sheriff's policies, customs, and failures to train, supervise, and discipline, and of his ratification of his deputies' conduct by refusing to act on Plaintiff's complaints. Plaintiff pleads official-capacity liability on the grounds the Eleventh Circuit sustains, and not on any single incident standing alone: on a

settled custom of receiving citizens' Internal Affairs complaints and refusing to act on them, proved by the same citizen's two complaints ignored in a single year with a second unconstitutional arrest in between; and on ratification by the final policymaker, who was written to personally before the October 28, 2022 execution and never answered. Compare *Barnett v. MacArthur*, No. 16-17179 (11th Cir. Apr. 15, 2020) (summary judgment for the Sheriff on the Monell claim reversed where the Sheriff's own mandatory policy produced the constitutional violation), with *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015) (a single incident, without a pattern, does not establish municipal liability). Plaintiff does not plead respondeat superior, which § 1983 does not permit; the liability pleaded is the final policymaker's own — the two Internal Affairs complaints he received and refused to act on, and the personal letter he received and did not answer.

**215.** Plaintiff also wrote personally to the Sheriff asking for his help before the October 28, 2022 execution at her home, and she never received an answer, as alleged in paragraph 116.

**216.** The official-capacity claims in Counts I through VII and Count X are therefore also brought against Defendant Ivey in his official capacity, and Plaintiff seeks the damages alleged in those counts against him in that capacity as well.

**COUNT XII — County Liability for Animal Control, 42 U.S.C. § 1983**

**Plaintiff v. Brevard County, Florida**

**217.** Plaintiff incorporates paragraphs 1–17 and 18–51 and 121–123, and paragraph 157.

**218.** Brevard County, acting through the Board of County Commissioners, is responsible for animal control in Brevard County, was the named plaintiff in the twenty animal-control cases alleged in paragraphs 49–50, and its animal control officers carried out the seizures alleged in Count X.

**219.** The conduct alleged in Count X — entry without a warrant, seizure of animals from an absent owner, refusal of all information to the owner, euthanasia of a thirty-year-old mare over the owner's objection and without a final visit, a second seizure with no notice or opportunity to reclaim, a forfeiture of animals that no document identifies, and the taking of Plaintiff's cat in 2022 followed by a denial that the cat was there — was carried out under the County's animal control practices and customs, and reflects the County's failure to require the petition, notice, and hearing process of Florida Statutes § 828.073 before an owner's animals are kept, killed, or forfeited.

**220.** The County's practices were applied to Plaintiff repeatedly, in twenty cases over four years, as alleged in paragraphs 49–51, many of them built on the affidavits and statements of her neighbor, Defendant Deakins, whose affidavits were never filed in the cases that rested on them. A practice applied to the same citizen in twenty cases over four years is not a single incident; it is the settled custom and pattern that municipal liability requires. See *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015); *Barnett v. MacArthur*, No. 16-17179 (11th Cir. Apr. 15, 2020).

221. Plaintiff seeks the damages alleged in Count X against Defendant Brevard County as well.

**COUNT XIII — Conversion, Florida Law**

**Plaintiff v. John Doe Property Manager 1 and Alice DiBiase Deakins**

222. Plaintiff incorporates paragraphs 115–157.

223. Plaintiff owned the personal property at 1455 Martin Road alleged in paragraphs 144–154, including her tractor, lawn mower, three trailers, three motorcycles, 1971 Volkswagen convertible, horse trailer, and Sea Ray boat, and her household property, including her china, glass, art collection, and Italian leather furniture.

224. On and after October 28, 2022, Defendant John Doe Property Manager 1, through its staff who were present at the execution, took control of Plaintiff's property, placed it in the courtyard where it could not be retrieved, ordered Plaintiff trespassed, caused a dumpster crew to begin throwing her property into a dumpster at 4:30 p.m. on October 29, 2022, took the items alleged in paragraph 154 away, denied her access when she called, never replied to her emails and texts of October 31, 2022, and gave her no notice under Florida Statutes §§ 715.10–715.105, no storage record, and no notice to this day of where her property is, as alleged in paragraphs 142–154.

225. Defendant Deakins participated in the same taking, as alleged in paragraphs 120 and 126–132: she acted as the lead in the eviction, used her relationship with the property management to get Plaintiff trespassed, told

Ronald Huff that the property was not Plaintiff's anymore, and, with people helping her, gathered Plaintiff's trailers, furniture, tools, materials, and roof material. Defendant Deakins is sued in her individual capacity for these acts, which were done in bad faith and with malicious purpose, and outside the scope of her employment, within Florida Statutes § 768.28(9)(a).

**226.** Plaintiff demanded the return of, and access to, her property, by her presence at the property on October 28–31, 2022, by her calls, and by her emails and texts of October 31, 2022, as alleged in paragraphs 146, 152, and 153. Defendants refused, and exercised dominion over her property inconsistent with her ownership of it. A seizure, within the Fourth Amendment, is a meaningful interference with a person's possessory interests in property, and the Amendment protects property as well as privacy in the eviction context. *Soldal v. Cook County*, 506 U.S. 56 (1992). Plaintiff frames the wrong accordingly: not the execution of the writ on the real property, but the interference with her belongings beyond anything the writ authorized — their taking, keeping, and destruction after her demands and during the retrieval her presence was seeking — which no writ ordered and no notice preceded.

**227.** As a direct result, Plaintiff lost the property alleged in paragraph 223. Her total property loss was around $800,000, as alleged in paragraph 155. She seeks its value, to be proved at trial from her itemized inventory, together with consequential damages.

## COUNT XIV — Conversion of the Headset, Florida Law, in the Alternative to Count IV

**Plaintiff v. Deputy Christian Portocarrero**

228. Plaintiff incorporates paragraphs 1–17 and 137–141, and paragraph 157.

229. Plaintiff owned the Bose 350 headset alleged in paragraph 140.

230. Defendant Portocarrero took the headset from her during her arrest on November 1, 2022, dropped it, and never returned it, and it was not among her property when she got back. Defendant Portocarrero is sued in his individual capacity; the taking and keeping of Plaintiff's headset was done in bad faith and outside the scope of his employment, within Florida Statutes § 768.28(9)(a).

231. As a direct result, Plaintiff lost the headset and seeks its value and consequential damages.

## COUNT XV — Replevin, Florida Law, in the Alternative to Count XIII

**Plaintiff v. John Doe Property Manager 1**

232. Plaintiff incorporates paragraphs 1–17 and 142–157.

233. The items alleged in paragraph 154 — Plaintiff's tractor, lawn mower, three trailers, three motorcycles, 1971 Volkswagen convertible, horse trailer, and Sea Ray boat — are specific, identifiable items, several of them titled or registered.

234. To the extent any of those items remains in the possession or control of Defendant John Doe Property Manager 1 or of anyone acting for it, Plaintiff is

entitled to possession of them, having received no notice of where they are and no opportunity to reclaim them, as alleged in paragraph 145.

**235.** Plaintiff seeks replevin of any such item still held, and, in the alternative, its value under Count XIII.

**COUNT XVI — Municipal Liability, 42 U.S.C. § 1983 (Monell)**

**Plaintiff v. City of Rockledge, Florida**

**236.** Plaintiff incorporates paragraphs 1–17 and 25, 52–89, 120, and 126–134, and paragraph 157.

**237.** The Rockledge Police Department is the police department of Defendant City of Rockledge and is not a separate legal entity; this count is brought against the City for the acts of its Department and of its officer, Defendant Deakins, who was a City police officer continuously through the whole 2017 to 2022 period, as alleged in paragraphs 53 and 82. Acting in the City's uniform and marked patrol car, Defendant Deakins committed the under-color acts alleged in paragraphs 54–57, 84, 120, and 126–134 — stopping and interrogating Plaintiff's workers and visitors on Plaintiff's own property, entering Plaintiff's driveway to accuse her of drug involvement, ordering Plaintiff off a neighbor's driveway on a statement that was not true, and leading the November 1, 2022 operation that ended in Plaintiff's arrest — all of it at Martin Road, outside the City's own jurisdiction, as alleged in paragraphs 25 and 83, and all of it against her own next-door neighbor. The City's own officers also stopped

Plaintiff two times and searched her car for drugs, as alleged in paragraphs 88–89 and Count XVII.

**238.** Those acts were carried out under the City's settled custom and practice, and not as one officer's single, isolated incident. For five years, openly and repeatedly, a City corporal used the Department's uniform, its marked patrol car, and its sirens to wage a personal campaign against the woman next door: uninvited patrol-car visits with sirens from November to March (paragraph 54); the repeated removal and destruction of Plaintiff's signs in uniform from the patrol car (paragraph 55); the interrogation, in uniform, of every worker and visitor who came to Plaintiff's farm, the same people three and four times (paragraph 56); the driveway accusation of drug involvement, made in uniform from the patrol car (paragraph 57); the drones she arranged for police to fly over Plaintiff's farm (paragraph 59); and approximately two hundred calls to the police about Plaintiff and her home (paragraph 61). The Department also processed Defendant Deakins as its own witness against Plaintiff in Plaintiff's animal cases — its papers copying "Witness Corporal Deakins, ID #117, Rockledge Police Department," a hearing cancelled on her voicemail, and her subpoena directed to the Department's own address (paragraphs 51 and 86) — so her campaign against Plaintiff ran through the Department's own channels, in the Department's own name.

**239.** The City had notice, and its failure to act was deliberate indifference. Because of her unscrupulous actions, Defendant Deakins was demoted from being a corporal for a good period of time, as alleged in paragraph 53: the City

therefore knew that its officer engaged in unscrupulous conduct. Despite that knowledge, the City left her in its uniform, in its marked patrol car, with her corporal's rank and her department identification, and the campaign continued for years afterward — through the eviction week of October 2022 and the arrest of November 1, 2022 (paragraphs 120 and 126–137). A final policymaker who knows an officer has acted unscrupulously, returns her to the same uniform, car, and rank, and takes no step that stops the same conduct from continuing against the same citizen, has adopted that conduct as the municipality's own. That the City kept her in that rank, and kept using her as its own, is in the Department's own papers: in January 2020, two years into the campaign, the Department's filings in Plaintiff's animal cases copy "Witness Corporal Deakins, ID #117, Rockledge Police Department," and her unavailability and her subpoena were routed through the Department itself, as alleged in paragraphs 51 and 86. The City did not merely fail to stop the campaign; it continued to present its author to the courts as its own corporal and its own witness.[6]

**240.** Plaintiff pleads this count with the candor the governing cases require. She does not ask any single incident to carry municipal liability by itself: a single incident, without a pattern, does not establish Monell liability. *Weiland v.*

---

6. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978) (a municipality is liable under § 1983 when the action alleged to be unconstitutional "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or a custom so settled that it constitutes the municipality's own action); *Board of County Commissioners v. Brown*, 520 U.S. 397, 407 (1997) (municipal liability requires that the municipal action "was taken with the requisite degree of culpability" — deliberate indifference — "and must additionally show a direct causal link" to the constitutional deprivation). Plaintiff pleads no punitive damages against the City: municipalities are immune from punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).

*Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015). She pleads instead what *Barnett v. MacArthur*, No. 16-17179 (11th Cir. Apr. 15, 2020), and the pattern cases sustain: a years-long, open, repeated use of the Department's own resources against one citizen, known to the City through its own discipline of the officer, and continued afterward without interruption — a settled custom, and a failure to supervise and discipline amounting to deliberate indifference to Plaintiff's constitutional rights.

**241.** In the alternative, Plaintiff pleads that the City failed to train and supervise its officers on the use of department uniforms, vehicles, and authority for personal purposes, and on officers' personal conflicts with the residents they police — a failure shown by the same pattern alleged in paragraph 238, in which one officer's personal vendetta was conducted with department resources, in department channels, for five years, at an address her own department had no jurisdiction over.

**242.** As a direct result of the City's customs, practices, and deliberate indifference, Plaintiff suffered the constitutional violations alleged in paragraphs 237–239, the stops and search alleged in Count XVII, and the damages alleged in Counts VIII, IX, and XIII to the extent those counts rest on Defendant Deakins's under-color acts.

## COUNT XVII — Unreasonable Stops and Search of Plaintiff's Car, 42 U.S.C. § 1983, Fourth Amendment

**Plaintiff v. City of Rockledge, Florida, and John Doe Rockledge Police Officers 1 and 2**

243. Plaintiff incorporates paragraphs 1–17 and 25 and 82–89, and paragraph 157.

244. Rockledge Police Department officers stopped Plaintiff two times and searched Plaintiff's car, looking for drugs. The officers found nothing. There were no drugs, as alleged in paragraphs 88–89.

245. A traffic stop is a seizure, and its lawful scope is set by its mission. "Authority for the seizure thus ends when tasks tied to the traffic infraction are — or reasonably should have been — completed," and a stop "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of the stop; a search for drugs is a measure aimed at detecting evidence of ordinary criminal wrongdoing, not an ordinary inquiry incident to a traffic stop. *Rodriguez v. United States*, 575 U.S. 431, 439–40, 444 (2015).[7] The two stops of Plaintiff and the search of her car were undertaken to look for drugs. No drugs existed, none were found, and no warrant, consent, or probable cause for the stops or the search appears anywhere in Plaintiff's papers. The stops and the

---

7. *Rodriguez v. United States*, 575 U.S. 431 (2015): a stop "exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures"; "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop'" — license, warrants, registration, insurance; "[a] dog sniff, by contrast, 'is a measure aimed at detect[ing] evidence of ordinary criminal wrongdoing'" and "is not fairly characterized as part of the officer's traffic mission." The judgment below was vacated and the case remanded.

search were unreasonable seizures and a search in violation of the Fourth Amendment. To the extent either stop or the search occurred at Plaintiff's home or within its curtilage, it was unlawful for the further reason that the automobile exception does not permit an officer, uninvited and without a warrant, to enter a home or its curtilage to search a vehicle there. *Collins v. Virginia*, 584 U.S. 586 (2018).[8]

**246.** Defendants John Doe Rockledge Police Officers 1 and 2 committed the stops and the search under color of the laws of the State of Florida and of the City of Rockledge. Defendant City of Rockledge is liable for the stops and the search on the custom, practice, and deliberate-indifference grounds alleged in Count XVI, of which the stops and the search of Plaintiff's car — two more drug-directed intrusions against the same citizen her own department's corporal was campaigning against — formed a part.

**247.** Plaintiff pleads the timing of this count with candor. The facts available to Plaintiff do not fix the calendar dates of the two stops; she alleges they occurred during the 2017 to 2022 course of conduct alleged in this complaint, while Defendant Deakins's campaign against her was running and while drug accusations against her were being made and investigated, as alleged in paragraphs 57–59 and 108. To the extent either stop is shown to have accrued

---

8. *Collins v. Virginia*, 584 U.S. 586, 592, 600–01 (2018): "This case presents the question whether the automobile exception to the Fourth Amendment permits a police officer, uninvited and without a warrant, to enter the curtilage of a home in order to search a vehicle parked therein. It does not." "[T]he automobile exception does not permit an officer without a warrant to enter a home or its curtilage in order to search a vehicle therein." The judgment against the vehicle owner was reversed.

outside the limitations period, Plaintiff pleads that stop in the alternative as background and pattern evidence under Part IV.I and in support of Count XVI, and she seeks standalone damages under this count for each stop shown to be timely.

**248.** As a direct result of the stops and the search, Plaintiff was seized, detained, subjected to a search of her car, and suffered humiliation, fear, and emotional distress.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Claudia Lopez demands judgment against Defendants as follows:

A. Compensatory damages in an amount to be proved at trial, for the loss of her liberty in the arrests and prosecutions alleged, for the denial of medical care on November 1, 2022, for the stops and the search of her car alleged in Count XVII, for the loss of her animals, for the loss of her cat, for the loss of her Bose 350 headset, and for the loss of the personal property alleged in Count XIII, together with her emotional distress;

B. Nominal damages for the constitutional violations alleged, if the jury finds a violation with no greater proved loss on any count;

C. Punitive damages against Defendants Hooper, Portocarrero, and Deakins, in their individual capacities only;

D. Pre-judgment and post-judgment interest as allowed by law;

E. Her costs of this action;

F. A declaration, under 28 U.S.C. § 2201, that the arrest of Plaintiff on November 1, 2022 for calling 911 violated her rights under the First and Fourth Amendments;

G. A declaration, under 28 U.S.C. § 2201, that the two stops of Plaintiff and the search of her car by Rockledge Police Department officers violated her rights under the Fourth Amendment;

H. Return of any item replevied under Count XV that is still held; and

I. Such other and further relief as the Court deems just.

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 2, 2026.

Respectfully submitted,

/s/ Claudia Lopez **Claudia Lopez**, Plaintiff pro se 465 Minutemen Causeway, Unit 435 Cocoa Beach, FL 32931 Telephone: (321) 210-1138 Email: Justicetime2026@gmail.com

## RULE 11 SIGNATURE

By signing above, Plaintiff signs this Complaint personally, as Fed. R. Civ. P. 11(a) requires an unrepresented party to do, and certifies, as Rule 11(b) provides, that to the best of her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the factual contentions in this Complaint have evidentiary support, and that she will serve each Defendant

within the time required by Fed. R. Civ. P. 4(m) after filing. This Complaint is signed under Rule 11; it is not a verified complaint, and Plaintiff does not present it as a sworn affidavit.

Respectfully

Claudia Lopez